The next case on the calendar is United States v. LeMay. May it please the Court, Counsel, my name is Jeremy Gordon, and I represent the appellant in this case, Ms. Janelle LeMay. We're here on the appeal of a case from the Eastern District of New York where LeMay was Many of those crimes involved mandatory minimums of either 10 or 15 years. The first plea hearing on that was adjourned with no plea taken. At the second change of plea hearing, the Court made a counterproposal with regards to a 1594C charge, and the Court gave an explanation to the counsels about the advantages and the disadvantages of pleading to that, including the Court's mention that there was no mandatory minimum to the pleading pursuant to a 1594C. I'm having difficulty seeing how the district court statements, and help me out, during that conference, amounted to participating in plea negotiations as opposed to expressing – I mean, the overall thrust of her remarks seemed, I'm concerned that a plea to this – to the offense that the counsel is contemplating would not be legally sufficient. With regards to that, I find the Crowell case that was listed in our reply brief to be instructive, because it indicates that the Court may not suggest plea agreements that would be acceptable, and that when it did, that's when the Court crossed the line in negotiations, because not only did the Court suggest a 1594C charge, but the Court also suggested that the parties consider going with an 11C1C agreement on that 1591 charge. Roberts, she didn't – the parties had agreed on 10 years, basically, prior to this, right? That was the agreement that the parties had. But the judge said the route you're following has no, you know, will not lead to 10 years. It will lead to 15 years, because I'm going to insist on knowing what the age of the victim was, and the age of the victim would put it in a 15-year category. So the parties hadn't really worked out how they were going to get to 10 years in light of that, and all she did was, it seems to me, was say, well, there is a route that you could follow, but it's up to you. And then she mentioned the 1594C plus the, you know, the Rule 11C1 effect. And so how is that – that's not the mischief that we're talking about, where a judge is talking about a certain plea that you have to take, or otherwise, you're, you know, you're going to displease me. She wasn't – she didn't care. It was really up to the parties. She just had – came up with a different route. I would submit, Your Honor, that the statements that the judge made were improper, because not only were they suggesting what to charge, but they were also – and also pressuring to the parties to say, go back and call your office, go back and call your office and tell them that I believe that a mistake was made here, and statements saying, I mean, you should go back to the negotiating table, and things such as that. The mistake that she saw that was being made was the fact that what you were doing would not lead to a 10-year sentence. It would only – it would lead to a 15-year sentence, right? Those are the statements that the Court made, but it's our position that that counterproposal was beyond – it's our position that that counterproposal and the fact that the judge came up – that the Court came up with that counterproposal on the Court's own is a – is beyond the pale, and it's beyond what's – what is provided for in cases like the Villa. Sotomayor, what's the actual relief you're looking for here? The relief that we're asking for, Judge, is to – is a remand of the case back down to district court. For what purpose? Because – because of a violation of Rule 11. Because of what? For what purpose are you asking for a remand? We're asking it for – because the – because the Court's statements were – What do you want the Court to do on remand? I want for the Court to – I want for the Court to allow the parties to come up with their own plea agreement and – and give that and – and come to the Court with that and for the Court to say, we either – the Court either takes it or the Court doesn't take it, as opposed to counter – making counterproposals. Do you have any reason to think that the result's going to be any different? Maybe you'd like to have this – have this sentence revisited and maybe have your client get – get a 15-year sentence. Is that – is that what you're looking for? I believe that – I believe that the parties could – I believe that the parties could come up with something, especially if there's – especially if there is a – I mean, the parties could come up with that. The parties could come up – the parties could decide we should go to trial instead. The parties could come up with a number of different things. It's – it's – it's our argument, Judge, that the Court should – that the – that the – we're asking the Court to – Withdraw the plea? Have you – Yes, Your Honor. You asked to withdraw the guilty plea? Yes, Your Honor. And go to trial? And go to trial. That could be one thing that we could do. That could be one thing that could happen, or it could be that we could come to some other relief. It could be that the – that the Court – that the government could offer something else, to come down to something else. Okay. Okay. So – so our argument is that the statements that the district court made are – are beyond what is allowed in Rule 11, and it goes beyond the argument that the judge was looking for a reasonable basis to take the plea. The – the court – the comments that were made were more egregious in other cases where the court said, I would seriously think about it. Life in prison is a long time. It's really nothing to play with, which is what happened in Bruce. In the Bruce case, the offer was already on the table, and it was a court statement to the parties and the defendants that got that plea to the finish line. And in this case, the plea was something that was not – that was not – that the court was struggling with, and the parties were looking – and the parties were looking at their calendars and said – The court said it couldn't – couldn't accept a plea under B-2 because the defendant could not – could not admit having dealt with a child who was over the age of 14 and less than 18, because that wouldn't have been true. Yes, Your Honor. That's – So the court couldn't accept a plea under B-2. Yes, Your Honor. And – and that goes to the – that goes back to our argument that the court should have – that the court should have – this case could have gone to trial. This case could have gone to trial. That was an argument. But if it went to trial, then the facts would come out that the child was under the age of 14, and the mandatory minimum would have been 15 years. That's – that's what you're – that's what you're suggesting might go – might happen if we remand. That is one possible – that is one possibility. That is one possibility. It might be that the parties might come to some other possibility in the future. Such as in 1594C. That also – that also could be possible. Which is what happened here now. That also could be possible. There are a number of things that could happen. I see that my time is up. Good morning, Your Honors. May it please the Court. Sam Nitze representing the government in this appeal. Before I get into the merits, I just wanted to note for the panel, although not relevant to the question before you on appeal, just as a – some context for the case, Ms. LeMay, it's my understanding, was released from custody on Friday and for compassionate release. She's quite ill, and the district court has let her go home to receive medical care. This is under the First Step Act and revised compassionate release provisions. The district court did not violate Rule 11 in the context of taking this plea. And even if the court were to find that she had, vacator wouldn't be warranted under the applicable standard of review. I guess I would just like to focus the panel on two aspects of the framework for addressing challenges like this, articulated in . . . What is the standard of review? Harmless error or plain error? It's plain error review, although harmlessness would render it under the fourth prong of plain error review, vacator would not be warranted. But under the Davila case, I believe it's plain error review. So before getting to how the standard of review would shake out here, you have United States v. Paul, in which this court held that in analyzing a challenge under Rule 11 for involvement in plea discussions, you are looking at the purpose of the rule. And essentially, the rule is designed to prevent the coercive effect, the discussion where a defendant understands from the district court, however subtly, an interest or a preference that the defendant plead guilty, the possibility that there would be some penalty for not pleading guilty and going to trial. The Davila court, again, Supreme Court from 2013, confirmed this and said that the concern is that the defendant would be induced to plead guilty rather than risk displeasing the judge who would preside at trial. And secondly, unlike in the Ninth Circuit and Fifth, this court takes a — views the remarks in context, does not view it as a bright-line absolute prohibition and so analyzes a challenge in light of the purposes of the rule. And here, I think one of the critical facts, as Your Honors have already alluded to, is that the defendant's defense counsel said at the first sidebar, I have spoken at length with my client. She is of a clear mind. She wants to plead guilty. And everything flowed from a decision by the parties to enter into a plea with a defendant in your floor. Understandable why the defendant wouldn't have wanted to go to trial. This is an 8-year-old victim, a grandson. There is — there was — the evidence just from the text messages was — was very, very strong. And all that followed from there was the court's effort to come to a legally acceptable version of that — of that plea. There was — there's no way to read the record — to take from the record that the trial right. And then with respect to plain error review, there's just no — given that same fact, the indication of a desire to plead guilty, given the type of case that it was, there's no reason to think that had the court remained silent, the parties wouldn't have found this same result. Fashion a plea where the 10-year floor applies and come back to the court with the same — the same plea. So unless Your Honors have further questions, we'll rest on papers. Thank you very much. Your Honors, just a couple of points. It is true that in the Second Circuit there is no bright-line rule with regards to — with regards to these actions. But our argument is still that the case-specific facts here were — are enough to show that there is a violation — a violation of Rule 11. The — the case-specific factors include the judge's — the court's counterproposal, the statements about the mandatory minimum, and the fact that — and the fact that the judge — the court made statements that were highly suggestive to the parties. That's the — that's the first thing. The second thing is that — that — that nowhere in the charges that she was facing in this super — in the final superseding indictment was this a — was — were they near this? The charges were — there were 5094 charges, but there's also 2251 charges, which have mandatory minimums of 10 and 15 years. And there's also — and as well as the — the sex trafficking charges, which — which under the facts play would have been 15 years. So — so our argument there is that — that the court would not — that the parties — it's unlikely that the parties would have came to that determination on — on their own. In fact, that's why the parties were, as the transcript shows, talking about this is when we can go to trial, and this is — and this is — these are our options for — for going forward on trial. Finally, with regards to the — the ultimate question — I'm sorry, but they came — but they came to this hearing with a specific proposal for a plea of guilty to B-2, right? Yes, Your Honor, they did. Okay. They — they came to — That's what they came to on their own, which the court said it couldn't accept because she could not truthfully allocute that the child was over the age of 14. Yes, Your Honor. But later on, in the same — in the same sidebar conference with the court, the parties were — the — especially the party for the — for Ms. LeMay was indicating that she could go to trial on this, that trial was an option, and that she had to clear certain things from her calendar in order to do that. So trial was still — so it's our argument that trial was still on the table at this point, and it's still something that the parties could do if they could not reach an agreement or if the agreement that they did reach, the court could not accept. I see that my time is up. Thank you. Thank you both. We'll take it under advisement.